GLADNEY, Judge.
The claimant-herein, John N. Smith, asserts a claim under the Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq., for total and permanent disability, alleging he sustained a back injury on or about December 1, 1954, while employed by the defendant, International Paper Company, at a paper mill in Bastrop, Louisiana. Respondent denied liability, asserting the claimant, while in its employment, did not experience an accident within the intent and meaning of the Workmen’s Compensation Act, but if the court should find its former employee has a back disability, then in such event, it should find also the disability was occasioned by a prior employment accident in East Baton Rouge Parish on or about March 8, 1954, at which time Smith was working for Consolidated Western Steel Division of the United States Steel Corporation. After trial had on October 10, 1957, upon the issues so presented, judgment was rendered rejecting the demands of plaintiff, hence this appeal.
The issues which have arisen in the case are of a factual nature dealing with the paramount question of whether any disability of Smith is causally connected with his employment by the defendant. Proof by the plaintiff of such causation is made more difficult by his prosecution of a workmen’s compensation claim for a similar back injury alleged to> have occurred on March 8, 1954, while an employee of Consolidated Western Steel. For clearer understanding of the evidence we present an account of the incidents relating to plaintiff’s claims for disability in the order of time, beginning with the accident of March 8, 1954.
The followng excerpts are taken from a joint petition filed on November 9, 1955, in East Baton Rouge Parish for a compromise settlement of plaintiff’s workmen’s *328 compensation claim based on the accident of March 8, 1954:
“The employee claims that on or about March 8, 1954, while he was working for said employer in East Baton Rouge Parish, Louisiana, he sustained physical injuries by accident which arose out of and in the course and scope of his employment, when he was struck in the back by a large ■cable; that because of the injuries he thus sustained, which included serious injury to the bones, ligaments, tendons, muscles, nerves and soft tissues of his back, and which included also one or more ruptured discs, he has been ever since that time unable to perform the character of work which he was performing when injured, or work of any other reasonable character, and he has been and continues to be totally and permanently disabled for the performance of his trade and occupation; jH # >Ji
“* * * ^at on or about March 27, 1954, the employee did report to the •employer that while at work on or about March 8, 1954 he had felt a '‘catch’ in his back; the employer and the insurer allege that the employee had not reported any such accident on ■or about March 8, 1954, and he made no complaint of any such accident until •on or about March 27, 1954; that in an effort to be entirely fair to the •employee, he was sent to a doctor who treated him although he did not stop work, and the diagnosis was muscle strain and the employee was seen by this doctor on April 2, 1954 and April 5, 1954 and April 9, 1954; they further allege that on or about April 9, 1954 the employee and others were laid off due to the completion of the job on which they were working; the employer and the insurer further allege that the employee returned to the same doctor on May 21, 1954 complaining of back pain, and he was given some further medical treatment and was again seen on June 1, 1954 when the doctor then reported that in view of negative findings he had advised the employee to seek employment and he believed the employee could continue employment in the same capacity as before his alleged injury.”
On September 24, 1954, plaintiff was operated on by Dr. Duane Forman, a neuro-surgeon of Baton Rouge, who testified a herniated disc at the level of the fifth lumbar vertebra was found and removed. Less than a month later, on October 19, 1954, plaintiff was given a letter by the doctor referring to the operation and stating Smith had fully recovered and was capable of fully performing the duties of his avocation. The letter was not filed in evidence. It was, of course, intended to be of help to Smith in securing employment. On November 17, 1954, Smith was employed by the defendant. He worked regularly without absence until December 20, 1954, a few weeks before the job was finished, when he went to Baton Rouge to see Dr. Forman. Upon returning to Bas-trop he quit his employment, giving as his reason therefor the condition of his back. On February 2, 1955, Dr. Forman caused a myelogram and X-rays to be made, from which he concluded plaintiff was suffering from ail injury to the disc at the level of the fourth lumbar vertebra.
On June 3, 1955, the testimony of Smith by deposition was taken in Baton Rouge by an attorney representing the insurer of Consolidated Western Steel. Smith was asked by Mr. Hunter, the attorney, if the operation by Dr. Forman had improved his condition and he answered: “Well, it improved that condition a good bit. Immediately after the operation I seemed to improve a bit and in á week or two, then it seemed I never did actually get completely well. But I did feel better. I had been having a lot of pain in my hip and my leg and it knocked most of that out, but I never did get completely over it.” With counsel in the instant suit reading from the deposition, Smith was also asked: “How many days had you been working *329 for International Paper Company when it (the hack) started bothering you again? and you said: ‘The first night, I mean, it bothered me.’ Didn’t you say that?” Smith did not remember his testimony.
On November 9, 1955, a compromise settlement was effected between plaintiff and Consolidated Western Steel with reference to the injury allegedly received by the plaintiff during his employment in March, 1954. As a result of this settlement, plaintiff received $4,000 and medical expenses.
For proof of the occurrence of the accident on or about December 1, 1954, plaintiff relied on his own testimony and that of George Luna, co-worker on the job, but Luna testified Smith had not made any reference to him of having received a sudden pain or breaking down of his back on or about December 1st. He said Smith was a hard worker and fully performed his duties. He recalled Smith in December did say something to him about the condition of his hack.
From December 1, 1954, until some time in July, 1955, immediately before the present suit was filed, Smith did not report any employment injury to the paper company. His own testimony reveals' he considered his pain was due to the accident of March 8, 1954, and was evidenced by the same symptoms. Apparently Dr. Forman was also of this opinion until the myelogram made on February 2, 1955.
The testimony of A. G. Barker and R. J. Thompson, assistant foreman and foreman, respectively, over the gang in which plaintiff worked from November 17th to December 20, 1954, testified Smith performed the duties connected with his work in a satisfactory manner. Barker recalled Smith told him he wanted to be off a few days to go to Baton Rouge for a check-up and see his doctor; and that upon his return after seeing the cloctor, he said he would have to quit as he was not able to fully do his work. Thompson said Smith came to him and wanted to have a day off to go to Baton Rouge to see his doctor. The witness further testified: “And the way he explained it to me, he had been hurt on a previous job and he wanted to go back to have this periodical check-up with the doctor * * And after he came back from. Baton Rouge Smith told! him he would have to quit working as the doctor had told him his back would not recover as long as he continued to work and that he would have to take time off and rest in order to get well.
W. E. Brodnax, a claim investigator for the paper company, testified he visited Smith at Roseland on July 16, 1956, and that the latter told him he had been previously injured and was operated on at a hospital in Baton Rouge; that he removed his shirt and disclosed a scar at the lower part of his back; and that Smith then told him: “I blame Dr. Forman for not removing another disc from my back,” and “He also sent me out on the job before I should have come. * * * He sent me out on the job too early and I blame him for not taking another disc from my back.” Smith could not remember making the above statements to Thompson or Brodnax.
It is proper to observe the opinion formed by Dr. Forman as to when, where, and how the onset of the disability began, was based entirely upon what the plaintiff told the doctor to that effect. The testimony of plaintiff is not persuasive that he suffered a sudden pain while engaged in his work for the defendant, and which he took no trouble to report during the six months preceding the time when he claims to have suffered the injury.
Prior to the operation of September 24th a myelogram was not performed by Dr. Forman in order to ascertain the existence and location of a ruptured disc. The doctor testified the clinical symptoms presented a classic example of injury at the fifth lumbar level as indicated by findings of compression of the sacral nerve. Dr. For-man testified the myelogram taken on February 2, 1955, showed a persistent small defect at the fourth lumbar disc and com firmed his suspicion of a rupture of the *330 fourth lumbar disc. Dr. Forman further stated that upon the examination of December 20, 1954, he found a residual of previous nerve root compression, including some numbness along the lateral aspect of his foot and little toe side of the posterior lateral aspect of his leg, and thigh in the first sacral dermato, first sacral nerve root distribution. He said Smith had experienced this all along and it had not cleared up following surgery. The doctor found also at that time, for the first time, numbness over the top of the foot with some loss of sensation over this part and the outside part of the foot.
As we view the testimony of Dr. For-man the only difference observed clinically between plaintiff’s condition before the operation on September 24, 1954 and the condition existing on December 20, 1954, was a numbness over the top of plaintiff’s foot. All other clinical symptoms in September, 1954, were similar to those in February of 1955. However, it appears in Dr. For-man’s testimony that even during December of 1954 he was of the opinion plaintiff’s pain was due to the operation of September 24, 1954, and it is not made clear that as of that time he even suspected injury to other than the fifth lumbar disc. It was the myelogram of February 2, 1955, which Dr. Forman said confirmed his suspicion of an injury at that level. Dr. Forman testified that prior to the operation of September 24, 1954, he did not have the benefit of a myelogram and during the operation he did not ascertain the condition of the fourth lumbar disc, but confined his operation entirely to observation of the fifth lumbar disc. In attempting to explain his opinion there was an injury to the fourth lumbar disc, he said:
“ * * * well, I assumed since he recovered from his first disc following surgery, and gave a history of not getting severe trouble while working again, that I would assume that the second disc occurred when he was at his job after surgery — if all of the history is accurate.”
The only medical evidence tendered by the defendant was the findings of Dr. W. V. Gamier, an experienced general surgeon of Bastrop, who made a thorough physical examination of Smith on November 1, 1956. His findings, including readings of X-rays of the back, were essentially negative. He did not undertake a myelogram.
A recapitulation of the evidence indicates a number of weak places in plaintiff’s case. These include the inconsistencies in plaintiff’s statements concerning the occurrence of the accident of December 1, 1954; his own opinion that his pain in November or December, 1954, was due to the injury on March 8, 1954; the absence of any substantial medical evidence of the existence or non-existence of an injury of the fourth lumbar disc prior to February 2, 1955 ; and Dr. Forman’s inconclusive opinion plaintiff’s disability was not connected with the injury of March 8,1954.
The evidence, in our opinion, does not justify our holding the trial court was in error, and, therefore, we affirm the judgment from which appealed, at appellant’s costs.